**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 8, 2015
Date Decided: October 8, 2015

Derrick B. Farrell, Esquire
James R. Banko, Esquire
Faruqi & Faruqi, LLP
20 Montchanin Road, Suite 145
Wilmington, DE 19807

Rudolf Koch, Esquire
Christopher H. Lyons, Esquire
Elizabeth A. DeFelice, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Kevin R. Shannon, Esquire
Jaclyn Levy, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899

Re: *Nguyen v. Barrett*, Civil Action No. 11511-VCG

Dear Counsel:

This matter came before me today on the Plaintiff's request for preliminary injunctive relief, seeking to enjoin the closing of a tender offer pending disclosure of certain financial information to the Plaintiff, and to a purported class of stockholders of Millennial Media, Inc. After argument, and in light of the briefing, I denied the requested injunction. The Plaintiff immediately made this oral Motion for an Emergency Certification of Interlocutory Appeal (the "Emergency Motion").

The Defendants noted their opposition to the motion. For the reasons that follow, pursuant to Supreme Court Rule 42, certification is denied.

The action filed by Plaintiff An Nguyen challenges an all-cash tender offer (the "Tender Offer") by Mars Acquisition Sub, Inc. ("Merger Sub")—a wholly owned subsidiary of AOL Inc. ("AOL")—to purchase all of the outstanding stock of Millennial Media, Inc. ("Millennial" or the "Company"), upon the completion of which Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and as a wholly owned subsidiary of AOL. On September 18, 2015, Millennial filed a Schedule 14D-9 (the "Proxy" or "Recommendation Statement") in connection with the Tender Offer, which is due to close on October 16, 2015.

Plaintiff's Amended Complaint, filed September 24, 2015, alleges that (1) the merger consideration and the sales process were fundamentally unfair to Millennial's stockholders; (2) the merger agreement included unreasonable deal protection provisions; and (3) the Proxy was materially incomplete and misleading, in that it fails to adequately disclose material information related to the Tender Offer, including the process leading up to the consummation of the Tender Offer; the financial analyses conducted by the Board's financial advisor, LUMA Securities LLC ("LUMA"), in support of its fairness opinion; and the Company's financial projections.

The number of disclosure violations alleged is extraordinary: the Amended Complaint identifies several specific areas where the Proxy is allegedly materially incomplete and misleading, listing what Plaintiff believes to be the missing disclosures. A full recitation of those missing disclosures follows.

In the "Background to the Merger" section, the Plaintiff alleges that the Proxy fails to disclose: (a) "[w]hether the implied per share value ranges LUMA calculated in connection with the various financial analyses it performed to determine the fairness of AOL's $2.10 per share offer were the same as the implied per share value ranges it calculated in connection with AOL's $1.75 per share offer, and if not, the value ranges LUMA calculated in connection with AOL's $2.10 per share offer (*see* Recommendation Statement at 18)"; (b) "[w]hy the strategic committee determined that AOL's initial proposal of $2.00 per share was 'not in the best interest of the Company's stockholders,'" which Plaintiff alleges is "material given that the Board ultimately agreed to accept the significantly lower Merger Consideration of $1.75 per share (*see* Recommendation Statement at 15)"; (c) "[a]n explanation concerning why Company A and Company C were informed that the 'Company's strategic process was nearing conclusion' sometime between June 2 and June 15, when the Company had not even received an offer it deemed actionable from AOL at that point in time (Recommendation Statement at 15)"; (d) "[a] fair summary of the 'possibility of interest from any other parties' as discussed by the strategic

3

committee on June 8, 2015 (Recommendation Statement at 16)," which the Plaintiff alleges is "material to stockholders to determine whether the Board's decision to ultimately finalize a deal with AOL for significantly less consideration than it initially offered was reasonable and in their best interests"; (e) "[a] fair summary of the discussion led by Company management on August 26 concerning 'the reasons stated by AOL for the reduction in the per share purchase price,'" which the Plaintiff alleges is "material for stockholders to determine whether AOL's purported reasons for lowering its offer by $0.40 per share were actually supported by AOL's due diligence results and the Company's recent financial performance (Recommendation Statement at 21)"; and (f) "[t]he identity of the seven other Company employees with whom AOL entered into Offer Letters (Recommendation Statement at 19)," which the Plaintiff alleges is "material for stockholders to determine whether the sale and negotiation process was improperly influenced by conflicts of interest."

Additionally, the Plaintiff alleges that the Proxy, "fails to provide any information concerning the number of outstanding shares beneficially owned by Millennial's directors and executive officers as of the date the Merger Agreement was signed, and the aggregate cash consideration they will receive for such shares," arguing that "[s]uch information is material for Millennial's stockholders to determine whether the sale and negotiation process was improperly influenced by

4

the Board's desire to quickly cash out their otherwise illiquid shares in the Company."

With respect to LUMA's *Selected Companies Analysis*, found in the Proxy at pages 29–31, the Plaintiff alleges that the Proxy fails to disclose: (a) "[t]he specific criteria utilized to select the 14 companies that were used for the analysis," which the Plaintiff alleges is "material given the significant differences in the multiples that were calculated for each of the three categories of companies (*i.e.* Advertising Technology – Managed Media, Advertising Technology-Platform, and Digital Media/Interactive Marketing)"; (b) "[t]he LTM Revenue and CY 2015 Revenue multiples observed for each of the companies utilized for the analysis," which the Plaintiff alleges is "material for stockholders to determine whether the multiple ranges selected by LUMA were reasonable and appropriate"; and (c) "[t]he basis for LUMA's decision to utilize the lowest multiple ranges associated with the 'Advertising Technology-Managed Media' companies, when much higher multiples were observed for the two other categories of companies, including the Digital Media/Interactive Marketing group, of which AOL was included," arguing that "[s]uch information is material given that LUMA's decision to utilize the lowest range of trading multiples resulted in much lower implied per share value ranges."

With respect to LUMA's *Selected Transactions Analysis*, found in the Proxy at pages 31–32, the Plaintiff alleges that the Proxy fails to disclose: (a) "[t]he specific

5

criteria utilized to select the 6 transactions that were used for the analysis," which the Plaintiff alleges is "material given the significant differences in the multiples that were calculated for each of the transactions"; and (b) "[t]he enterprise value to current year revenue multiple calculated for each of the transactions utilized in this analysis, and the mean and median of the multiples observed," which the Plaintiff alleges are "material to stockholders because such information provides a necessary guidance point for stockholders to determine the most appropriate multiple to utilize for purposes of calculating an implied per share value range."

With respect to LUMA's *Illustrative Discounted Cash Flow Analyses*, found in the Proxy at pages 32–33, the Plaintiff alleges that the Proxy fails to disclose: (a) "the illustrative terminal values calculated for purposes of the analysis"; (b) "the basis for LUMA's decision to use an end-of-year discounting methodology, rather than the nearly universally used mid-period discounting convention"; (c) "the present value of Millennial's net operating loss carry-forwards, which was a benefit that was excluded from the analysis"; and (d) "quantification of the assumptions underlying LUMA's weighted average cost of capital calculation."

With respect to LUMA's *Premiums Paid Analysis*, found in the Proxy at page 33, the Plaintiff alleges that the Proxy fails to disclose: (a) "[t]he specific acquisitions that were utilized for purposes of the analysis," which the Plaintiff alleges is "material to stockholders because without such information they cannot determine

6

whether the acquisitions selected were actually comparable and appropriate for purposes of the analysis"; and (b) "[t]he low, high, mean and median premiums paid for the entire group of acquisitions that were reviewed," which the Plaintiff alleges is "material to stockholders because such information is necessary for them to determine whether the ranges LUMA selected were appropriate."

The Plaintiff alleges further that the Proxy "fails to disclose the amount of LUMA's $3.6 million fee that is contingent upon the completion of the Proposed Transaction, which is material for stockholders to determine whether LUMA's fairness opinion was improperly influenced by its desire to ensure that the Proposed Transaction is consummated."

With respect to Millennial's financial projections, found in the Proxy at pages 34–35, the Plaintiff alleges that the Proxy "fails to disclose the following information," which the Plaintiff argues "are particularly material given that two of the cases of projections resulted in a DCF illustrative price per share of $0.00": (a) "[w]hy AOL was not provided with the 'High Scenario' forecast (Recommendation Statement at 34)," which the Plaintiff alleges is "material given that the High Scenario forecast presented the most favorable picture of the Company's future financial performance and therefore supported a higher valuation for the Company"; (b) "[w]hy the Mid Scenario Adjusted EBITDA figures provided to AOL were different from the figures in the Millennial Projections (Recommendation Statement

7

at 35)"; (c) "[t]he standalone unlevered, after-tax free cash flows that the Company was forecasted to generate from 2015-2019 for each of the three forecasts that were prepared (i.e., High Scenario, Mid Scenario, and Low Scenario)," which the Plaintiff argues are material "because they are being asked to exchange their ownership stake in the Company and forego the Company's future cash flows in exchange for all-cash consideration today"; (d) "[s]tock-based compensation projections"; (e) "[n]et operating loss balances and utilization"; and (f) "[a]mortization expense."

With respect to the Cash and Debt Overview of the Millennial Projections, found in the Proxy at pages 35–37, the Plaintiff alleges that the Proxy "fails to disclose why the Mid Scenario and Low Scenario Net Cash figures provided to AOL were different from the figures in the Millennial Projections (Recommendation Statement at 36)."

Finally, the Plaintiff alleges that, with respect to the table of reconciliation of Adjusted EBITDA to GAAP operating income, found in the Proxy at page 36, the Proxy "fails to provide any detail concerning how the reconciling adjustments were made, which is material given that two of the cases of projections resulted in a DCF illustrative price per share of $0.00."

By the time this preliminary injunction request was submitted, these alleged disclosure allegations were abandoned, and are therefore waived, with a single exception, advanced in the alternative. The Plaintiff notes that management

provided inputs that LUMA, the financial advisor, used to derive unlevered, after-tax free cash flows and a discounted cash flow (DCF) valuation, and that the Company disclosed that fact in the Proxy, but that not all projections and inputs themselves were provided in the Proxy. The Plaintiff contends that the disclosures are misleading, because they imply that management itself (rather than LUMA) produced the projected unlevered, after-tax free cash flows, or alternatively, that all management projections and inputs relied on by LUMA must be disclosed as a matter of law.

**DISCUSSION**

The Tender Offer is to close on October 16. Given the press of time, I issued a bench ruling directly following oral argument. With respect to the argument that the 14D-9 was materially misleading,[1] I found that a fair reading of the Proxy disclosed accurately that management did not prepare forecasts of unlevered, after-tax free cash flows, but did provide revenue projections and other inputs from which LUMA derived unlevered, after-tax free cash flows and a DCF valuation. Therefore, I found it unlikely that the Plaintiff could prevail on the merits on this ground.

With respect to the argument that all inputs provided by management on which the financial advisor relied in its DCF valuation must, as a matter of law, be

---

[1] The Plaintiff argued that an implication that management had projected unlevered, after-tax free cash flows could give stockholders an unwarranted confidence in those projections, citing *Dias v. Purches*, 2012 WL 4503174 (Del. Ch. Oct. 1, 2012).

disclosed to stockholders, I found such a *per se* rule inconsistent with our case law. Further, I found that the Plaintiff had failed to demonstrate under the facts here that the Proxy was materially incomplete or misleading. My understanding of the Plaintiff's request for certification of an interlocutory appeal is that it is based solely on the contention that a *per se* rule exists, or should exist, that all management inputs relied on by the advisor in crafting a DCF must be disclosed.

Supreme Court Rule 42 controls interlocutory appeals. Earlier this year, the rule was amended to emphasize the exceptional nature of a grant of interlocutory review. The ground stated orally in the Emergency Motion is consistent with an application under Rule 41 (b) (ii) or (iii), made relevant here under Rule 42(b)(i), that my bench decision represents a conflict in the decisional law or involves an unsettled question of law. Under Rule 42(b), I must determine whether my bench decision determined a substantial issue, establishes a legal right, and meets one of the grounds stated above.

I find that the bench decision determined a substantial issue and established a legal right. The Defendants are, as a result of that decision, free to proceed with the Tender Offer without disclosing information that the Plaintiff contends is required by law. Without review, the Plaintiff will be forced to decide whether to tender without the information it seeks, although he will retain the right—assuming what he describes as inadequate disclosures prove to have been materially misleading,

10

causing him to improvidently tender—to seek damages under a quasi-appraisal metric.  However, I do not find our case law to be undeveloped or conflicted, and therefore I cannot certify interlocutory appeal.  Here, the Company did not prepare projected unlevered, after-tax free cash flows, and, accordingly, did not provide such projections to its financial advisor.  It did provide projections of earnings, non-cash stock based compensation, and change in net working capital.  While these precise inputs were not disclosed in the proxy, the Company did disclose projected net revenues, gross profits, and adjusted EBITDA.

The investment advisor, as disclosed in the Proxy, took the management forecasts, adjusted them for amortization of intangible assets which it obtained from the Company's form 10-K, made a decision to net out depreciation and amortization against capital expenditure, and thereby derived unlevered, after-tax free cash flows, using a formula explicitly set forth in the Proxy.  Our case law provides that, where the bankers derive unlevered, after-tax free cash flows rather than relying on management projections, the inputs on which they rely are not *per se* subject to disclosure.  As this Court has previously noted, "a disclosure that does not include all financial data needed to make an independent determination of fair value is not *per se* misleading or omitting a material fact.  The fact that the financial advisors

11

may have considered certain non-disclosed information does not alter this analysis."[2] Therefore, the Plaintiff's reliance on grounds that the case law is conflicted or undeveloped is misplaced. I do not understand the Plaintiff to contend for purposes of interlocutory appeal that, even in the absence of a *per se* disclosure rule, he has demonstrated that the information he seeks is material under the specific facts of this case, but even if he does, my determination to the contrary is based on my interpretation of the facts submitted in connection with the PI request, and does not turn on conflicted or unsettled case law.[3]

For the foregoing reasons, the Plaintiff's Emergency Motion for Certification of Interlocutory Appeal is denied. An appropriate order is attached.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[2] *In re Checkfree Corp. S'holders Litig.*, 2007 WL 3262188, at \*2 (Del. Ch., Oct. 18, 2007) (internal citations omitted).

[3] *Id.* (noting that a stockholder seeking disclosures must explain why "receiving information in addition to the basic financial data already disclosed" is material to his decision) (internal quotation omitted).

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AN NGUYEN, Individually and On Behalf of All Other Similarly Situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | C.A. No. 11511-VCG |
| | : | |
| v. | : | |
| | : | |
| MICHAEL G. BARRETT, THOMAS R. EVANS, ROBERT P. GOODMAN, PATRICK KERINS, ROSS B. LEVINSOHN, WENDA HARRIS MILLARD, JAMES A. THOLEN, AOL INC., and MARS ACQUISITION SUB, INC. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER DENYING LEAVE TO APPEAL
## FROM INTERLOCUTORY ORDER

AND NOW, TO WIT, this ___8th___ day of October, 2015, the Plaintiff having made application under Rule 42 of the Supreme Court for an order certifying an appeal from the interlocutory order of this Court, dated October 8, 2015; and the Court having found that such order decides a substantial issue of material importance but that the criteria of Supreme Court 42(b)(iii) do not apply,

IT IS ORDERED that certification to the Supreme Court of the State of Delaware for disposition in accordance with Rule 42 of that Court, is DENIED.

/s/ Sam Glasscock III
Vice Chancellor

13